IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISHMAEL A. BURK,        :<br>    *Plaintiff*,                  :<br>                             :<br>v.                             :        CIVIL ACTION NO. 23-CV-3004<br>                             :<br>MS. QUINN, *et al.*     :<br>    *Defendants*.        :| |

**MEMORANDUM**

**PAPPERT, J.**                                                                                       **August 22, 2023**

Ishmael A. Burk, a particularly litigious inmate currently confined at SCI Chester, filed this lawsuit seeking money damages for purported violations of his civil rights allegedly committed by Parole Agent Ms. James, Supervisor Ms. James, Unit Manager Ms. Neally, Grievance Coordinator Ms. Quinn, and Chief Grievance Officer D. Varner.[1] All Defendants are named in their official as well as their individual capacities. Burk also seeks leave to proceed *in forma pauperis*. For the following reasons, the request to proceed *in forma pauperis* will be granted, certain claims will be dismissed with prejudice, and the balance of Burk's claims will be served for a responsive pleading.

I[2]

Burk alleges that Defendant Parole Agent James came into his place of work in the jail kitchen and told his coworkers that Burk was denied parole. (Compl. at 8.) He

---

[1] Varner's name was entered incorrectly on the docket. In the accompanying Order, the Clerk of Court will be directed to correct it.

[2] The facts set forth in this Memorandum are taken from Burk's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

was not at work at the time.  Two days later, Parole Agent James called him into her office and told him he did not make parole.  (*Id*.)  Burk asked her if he could see a non-defendant named Ms. Juno and was told no.  (*Id*.)  Parole Agent James allegedly told Burk he did not make parole because he filed a lawsuit against a nurse who was James's friend.  (*Id*.)

Burk submitted a grievance along with a request to staff addressed to Defendant Supervisor Ms. James, apparently a person other than Parole Agent James.  (*Id*.)  The following day, Parole Agent James came into the "ODR" – the term is not explained – and "started to antagonize [Burk] telling [him] that she was glad that he did not make parole that on purpose she did not submit [Burk's] certificates so he would not make parole."  (*Id*.)  Burk left his work area notifying his instructor that he could not continue to work.  (*Id*.)

Burk submitted another grievance and the next day Defendant Unit Manager Neally called him into her office and allegedly pressured Burk to withdraw it, telling him it would not end well for him.  (*Id*. at 8-9.)  Burk told his mother about what happened and his mother called the prison and spoke with Parole Agent James and Supervisor James.  (*Id*. at 9.)  The next day, Burk was notified by his kitchen supervisor that he could no longer work in the kitchen because Parole Agent James and Supervisor James got him fired due to the call from Burk's mother.  (*Id*.)  Parole Agent James allegedly threatened Burk not to move forward with his lawsuit against the nurse "stating he would receive a hit from Parole."  (*Id*.)  Burk filed another grievance, but Defendant Neally investigated "only the first half of [Burk's] grievance but did not follow up on the second half."  (*Id*.)  Burk also appears to have appealed the result of

the grievances to Defendant Quinn who allegedly approved the denial of the grievance without a thorough investigation and "let the staff members get away without questioning them about why? my grievances have been denied." (*Id.* at 9-10.)

Burk alleges that Parole Agent James and Supervisor James have not submitted Burk's parole package and have stopped him from getting another job within the jail. (*Id.* at 10.) Defendant Varner, the Chief Grievance Officer, allegedly failed to properly investigate Burk's grievances "opting instead to dismiss and protect the staff at SCI Chester." (*Id.*) He also alleges that Quinn is not properly trained to be a grievance coordinator. (*Id.*)

## II

The Court will grant Burk leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Burk is proceeding *pro se*, the Court construes the allegations of

---

[3] Because Burk is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

3

the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

The Court understands Burk to assert constitutional claims for money damages against each named Defendant in their official as well as individual capacities. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A

Burk has named each Defendant in their official capacities. Each of the Defendants appears to be an employee of the Commonwealth of Pennsylvania at SCI Chester or possibly the Pennsylvania Board of Probation and Parole. The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against Commonwealth officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.[4] *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21,

---

[4] However, Commonwealth officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.*

4

25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Also, states are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Accordingly all official capacity claims for money damages are dismissed with prejudice.

B

Burk apparently asserts a First Amendment retaliation claim based on the actions of both Parole Officer James and Supervisor James. They allegedly told him he did not make parole because he filed a prior lawsuit against a nurse at SCI Chester, who was a friend of Parole Officer James. Parole Officer James also allegedly for this reason failed to submit paperwork so that Burk could make parole. Parole Officer James and Supervisor James also allegedly had Burk fired from his job in the prison kitchen after Burk's mother called the prison to complain about his treatment. Parole Agent James allegedly had threatened Burk not to move forward with his lawsuit against the nurse "stating he would receive a hit from Parole." (Compl. at 9.)

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). Based on Burk's allegations, the First Amendment retaliation claim will be served on Parole Officer James and Supervisor James for a responsive pleading.

C

Burk asserts claims against Neally, Quinn and Varner based on their handling of grievances he submitted about the actions of Parole Officer James and Supervisor James. He alleges Neally failed to investigate his entire claim and Quinn allegedly approved the denial of the grievance without a thorough investigation because she is not properly trained in how to resolve grievances. Neally also allegedly called Burk into her office and pressured Burk to withdraw his grievance, telling him it would not end well for him. Varner, the Chief Grievance Officer, allegedly failed to properly investigate Burk's grievances.

Claims based on the handling of prison grievances generally fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Burk about the handling of his grievances do not give rise to a plausible constitutional claim and will be dismissed with prejudice. *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).

Nonetheless, a prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). The allegation

that Neally pressured Burk to withdraw his grievance and that it would not end well for him if he did not, asserts a plausible First Amendment retaliation claim. Accordingly, while the claim based on the handling of grievances against Varner and Quinn will be dismissed, the claim against Neally will be served for a responsive pleading.

## IV

For the foregoing reasons, the Court will direct service of Burk's individual capacity retaliation claims against Parole Officer James, Supervisor James, and Unit Manager Neally. All official capacity claims and the individual capacity claims against Grievance Coordinator Quinn, and Chief Grievance Officer Varner will be dismissed. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**